UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GARRY MACENA,

    Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

    Defendant.

Civil Action No. TDC-14-3464

## MEMORANDUM OPINION

On November 4, 2014, *pro se* Plaintiff Garry Macena filed his Complaint against Defendant U.S. Citizenship and Immigration Services ("USCIS") arising from the denial of a visa to his fiancée, Rosanette Poulard, a Haitian national, to enter the United States in order to marry Macena. ECF No. 1. Pending before the Court is USCIS's Motion to Dismiss, ECF No. 9, in which USCIS asserts that this Court may not review the denial of a visa by a consular officer at the United States Embassy in Haiti under the doctrine of consular nonreviewability. Also pending is Macena's Request for Permission to Submit a Surreply. ECF No. 16. The Court has reviewed the pleadings and briefs, and no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Macena's Request for Permission to Submit a Surreply is GRANTED, and USCIS's Motion to Dismiss is GRANTED.

## BACKGROUND

On June 18, 2013, Macena filed a Petition for Alien Fiancée (the "K-1 Petition") on behalf of his fiancée, Rosanette Poulard, in which he sought a nonimmigrant visa for Poulard to enter the United States for their wedding. USCIS approved Macena's K-1 Petition on December

11, 2013 and forwarded it to the United States Department of State ("DOS"). On May 29, 2014, a DOS consular officer interviewed Poulard at the United States Embassy in Port-au-Prince, Haiti (the "Embassy"), but denied the visa application. The consular officer "refused her the visa because he thought she was inconsistent with the answers at the interview." Compl. 2, ECF No. 1.

On November 4, 2014, Macena filed his Complaint against USCIS in which he asks the Court to order USCIS to reopen the case and grant a visa to Poulard. Having alleged that he spent "[l]ots of money" on travel expenses and application fees, Macena also seeks $20,000 in damages. *Id.* at 3. On April 2, 2015, USCIS filed its Motion to Dismiss. Macena filed a Response to the Motion on April 20, 2015, and USCIS filed a Reply Memorandum on April 29, 2015. On June 17, 2015, Macena filed his Request for Permission to Submit a Surreply and attached his proposed submission.

## DISCUSSION

### I. Macena's Request for Permission to Submit a Surreply

The Court first addresses Macena's Request for Permission to Submit a Surreply. It is within the sound discretion of district courts to grant leave to file a surreply brief. *See FDIC v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013) (reviewing a district court's decision to grant a motion to strike a surreply under the abuse of discretion standard). Surreply briefs are not permitted without leave of the Court. D. Md. Local R. 105.2(a). The Court generally disfavors surreply briefs and typically does not permit their filing. In this specific instance, however, because courts are to construe *pro se* submissions liberally, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and because the Court finds no prejudice to USCIS from the filing of the

surreply brief, it grants the request and will consider Macena's surreply in its analysis and disposition of the Motion to Dismiss.

## II. USCIS's Motion to Dismiss

In its Motion, USCIS principally argues that (1) the Court lacks jurisdiction over Macena's claim under the doctrine of consular nonreviewability; and (2) there is no cause of action against USCIS because it complied with all legal requirements and approved the K-1 Petition. For the reasons set forth below, the Motion is granted.

### A. Legal Standard

USCIS filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) based on its argument that the Court lacks subject matter jurisdiction under the doctrine of consular nonreviewability. The law is not clear, however, whether that doctrine is a jurisdictional limitation on federal courts. *See Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009) (questioning whether consular nonreviewability is jurisdictional and noting that subject matter jurisdiction may exist under general federal question jurisdiction); *Adeyamo v. Kerry*, No. DKC 12-0874, 2011 WL 498169, at *2 (D. Md. Feb. 7, 2013) (citing *American Academy of Religion* and declining to decide whether consular nonreviewability is a jurisdictional bar). Particularly where, as USCIS acknowledges, it is not entirely certain whether Macena's claim in fact challenges the consular officer's determination as opposed to the actions of USCIS, the Court will treat the Motion as one for failure to state a claim under Rule 12(b)(6). *See Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012) (emphasizing the distinction between lack of subject matter jurisdiction and failure to state a claim and cautioning against improperly labeling matters as jurisdictional).

To defeat a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Complaints filed by *pro se* plaintiffs are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Id.*; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In evaluating the sufficiency of the plaintiff's claims, courts examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B. USCIS Action on the K-1 Petition

Although Macena appears to object to the consular officer's refusal to issue a visa to Poulard, this action is brought against USCIS, and the relief sought by Macena is an injunction requiring USCIS to "reopen the case" and to "grant Ms. Poulard the K-1 visa." Compl. 2. On the issue of whether USCIS should be required to grant the visa, Macena has failed to state a plausible claim against USCIS because under the legal regime for the issuance of nonimmigrant visas to fiancées of U.S. citizens, USCIS had no role in the denial of the visa and has no authority to issue it. The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–537 (2012), and the relevant regulations delineate the various steps to be completed to obtain a K-1 visa and the differing roles of USCIS and DOS officials at embassies around the world. The process begins when a U.S. citizen files a petition for a nonimmigrant visa for the petitioner's

4

foreign national fiancé or fiancée to enter the United States for the purpose of marrying the petitioner within 90 days of entry. 8 U.S.C. § 1184(d)(1); 8 C.F.R. § 214.2(k)(5) (2015). USCIS, a component of the United States Department of Homeland Security, is charged with reviewing and approving petitions based on a number of statutory and regulatory factors. *See* 8 U.S.C. § 1184(d)(1), (2) (describing the role of the Secretary of Homeland Security); 8 C.F.R. § 214.2(k). If USCIS approves a petition, USCIS forwards it to DOS, which sends it to the American embassy in home country of the fiancé or fiancée. The approval of the petition is valid for four months from the date that USCIS approved it. 8 C.F.R. § 214.2(k)(5).

At the embassy, a DOS consular officer is charged with issuing the actual visa. *See* 8 U.S.C. § 1184(d)(1); 8 U.S.C. § 1201(a)(1) (stating that consular officers issue immigrant and nonimmigrant visas). The consular officer, however, may refuse to issue the visa if the consular officer "knows or has reason to believe" that the person seeking the visa is ineligible to receive it. 8 U.S.C. § 1201(g); 22 C.F.R. § 41.121. The person seeking the visa has the burden to prove eligibility, and "[i]f such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa or other document required for entry, no visa . . . shall be issued to such person." 8 U.S.C. § 1361. In the event of such a refusal, the consular officer is required to "inform the alien of the ground(s) of ineligibility." 22 C.F.R. § 41.121(b)(1).

Here, Macena does not dispute that USCIS approved his K-1 Petition in December 2013 and forwarded it to DOS, whose consular officer refused to issue the visa. The Complaint's demand that USCIS issue the visa is therefore misplaced. Because USCIS has no authority to issue the visa, Macena cannot state a plausible claim for this relief against USCIS.

Macena also claims that USCIS should be required to "reopen the case." USCIS has asserted that following the consular official's action, the K-1 Petition was returned to USCIS on

5

December 4, 2014. Because the four-month period of validity had ended in April 2014, USCIS administratively closed the case file. Macena, however, alleges in his Response that since the filing of his Complaint, information on the USCIS website stated that the K-1 Petition was "reapproved" and sent to DOS. Pl.'s Resp. at 3. He further alleges that he spoke to a USCIS official in January 2015 and received a letter from USCIS in February 2015 stating that the case was back at the Embassy in Haiti. He claims to have scheduled another appointment for Poulard with a consular officer. On March 25, 2015, however, Poulard was informed that the appointment needed to be canceled because the Embassy had no pending petition or file. In the same time frame, USCIS sent a letter to Macena on March 20, 2015 informing him that the Embassy had returned the K-1 Petition because a consular official had refused to issue the visa, that the K-1 Petition had expired, and that the file had been administratively closed.

Although there may be a factual dispute on whether USCIS reapproved the K-1 Petition, the Court need not resolve that dispute or consider the information submitted outside the pleadings. There is no dispute that the K-1 Petition has now been closed, whether in December 2014 or March 2015. At issue is whether Macena has a plausible claim that USCIS must "reopen the case." Compl. 2. There can be no dispute that the original K-1 Petition, which is valid for four months, expired in April 2014. See 8 C.F.R. § 214.2(k)(5). The applicable regulations provide that "[a] petition which has expired due to the passage of time may be revalidated by a director or consular officer for a period of four months from the date of revalidation upon a finding that the petitioner and K-1 beneficiary are free to marry and intend to marry each other within 90 days of the beneficiary's entry into the United States." Id. It is unclear whether in this instance, where Macena's K-1 Petition expired after a consular officer

refused to issue the visa, rather than simply due to the passage of time, that USCIS has the authority to revalidate it.

Even if it had such discretionary authority, however, USCIS is not required by this regulation to revalidate the K-1 Petition, and Macena has identified no authority for this Court to require it to do so. A petition for a writ of mandamus under the Mandamus and Venue Act, 28 U.S.C. § 1361, would fail because "[m]andamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation," and if there is a "clear right to the relief sought," there is a "clear duty" to do the particular act requested, and "no other adequate remedy is available." *First Federal Savings & Loan Ass'n of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988). The regulation provides only that the petition "may" be revalidated, 8 C.F.R. § 214.2(k)(5), so there is no mandatory requirement or "clear duty" to do so. As USCIS has acknowledged, the failure to revalidate the original K-1 Petition "does not preclude" a petitioner such as Macena from filing another K-1 Petition, so there is an alternative remedy available. Def.'s Mot. Dismiss 8, ECF No. 9. Thus, construing the factual allegations in the light most favorable to Macena, the Court finds that he has not stated a plausible claim for relief against USCIS.

C.  **Consular Nonreviewability**

Although USCIS is the named defendant in this case, USCIS maintains that Macena's Complaint effectively challenges the actions of the consular officer. To the extent that Macena challenges the actions of the consular officer, either the original decision to refuse to issue the visa, or any subsequent decision not to revalidate the K-1 Petition under 8 C.F.R. § 214.2(k)(5), the doctrine of consular nonreviewability prevents the Court from reviewing those actions.

In general, the Supreme Court has held that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). Although the United States Court of Appeals for the Fourth Circuit has yet to address the doctrine of "consular nonreviewability," *see Adeyemo v. Kerry*, No. DKC 12-0874, 2013 WL 498169, at *2 (D. Md. Feb. 7, 2013), other Courts of Appeals have consistently held that a doctrine of "consular nonreviewability" precludes courts from reviewing a consular officer's decision to grant or deny a visa to a foreign national. *See, e.g., Am. Acad. of Religion*, 573 F.3d at 123; *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008); *City of New York v. Baker*, 878 F.2d 507, 512 (D.C. Cir. 1989).

In one limited circumstance, when a visa is denied in a manner that burdens a citizen's constitutional rights, courts may review the decision to see if it was made "on the basis of a facially legitimate and bona fide reason." *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972); *Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J. concurring); *Am. Academy of Religion*, 573 F.3d at 125; *Bustamante*, 531 F.3d at 1060. However, outside of these constitutional circumstances, the doctrine of consular nonreviewability is "essentially without exception." *Romero v. Consulate of the United States, Barranquilla, Columbia*, 860 F. Supp. 319, 322 (E.D. Va. 1994); *see also Bustamante*, 531 F.3d at 1061 (finding that the constitutional exception to the doctrine is "limited").

In his Complaint, Macena did not assert that the denial of Poulard's visa burdened his constitutional rights or that there is any other basis for judicial review of the K-1 Petition. Rather, he challenges the consular officer's determination, arguing that the officer "discredited [Poulard] without proof," rendering futile his payment of wedding expenses, travel costs, and

application fees. Compl. 2. This is precisely the type of consular decision that is "not within the province" of this Court to review. *See Shaughnessy*, 338 U.S. at 539–40, 543 (upholding the Attorney General's decision to deny a visa to a U.S. citizen's foreign national wife without a hearing and solely because "her admission would be prejudicial to the interests of the United States"). For better or worse, even if the consular officer made erroneous conclusions from the interview of Poulard, the Court is not in a position to review those conclusions. *See Loza-Bedoya v. INS*, 410 F.2d 343, 347 (9th Cir. 1969) ("Though erroneous this Court is without jurisdiction to order an American consular official to issue a visa to any alien whether excludable or not.").

In his Response to the Motion to Dismiss, Macena arguably asserts a violation of his constitutional rights when he asks, "How is [the consular officer] required to inform the applicant of the reason for the refusal but I have no constitutional[] interest in the consular officer's decision?" Pl.'s Resp. 3. Even if this statement could be construed as an amendment to the Complaint, *see Smith v. Blackledge*, 451 F.2d 1201, 1202–03 (4th Cir. 1971) (holding that the district court should have considered a *pro se* plaintiff's handwritten document denominated as "one to 'Further Particularize' the complaint" as an amended complaint), he has not asserted a plausible constitutional claim. Construed liberally, Macena could be asserting a claim that the denial of his fiancée's nonimmigrant visa to enter the United States to marry him violated a constitutionally protected liberty interest. However, the Supreme Court recently reversed a lower court ruling that a U.S. citizen, who challenged the denial of an immigrant visa to her foreign national husband, has a constitutionally protected liberty interest in living in the United States with her spouse. *Kerry v. Din*, 135 S. Ct. 2128, 2138 (2015). Although only a plurality of the Supreme Court definitively concluded that no such right exists, *id.*, the alleged right at issue

9

here is far more tenuous. Unlike in *Din*, where the citizen claimed a constitutional right arising from her marriage—that she had a constitutional right to live with her spouse in her home country—here, Macena would be claiming a constitutional right arising from his status as a fiancée. Moreover, the denial of the nonimmigrant K-1 visa to Poulard does not prevent Macena from marrying Poulard or eventually living with her together. It only prevents Macena from having someone with whom he is not yet married enter the United States for a 90-day period to have a marriage ceremony in the United States. Macena has identified no legal authority for the proposition that constitutional rights flow from one's status as a fiancée or that there is a constitutional right to have a marriage ceremony in the United States. Indeed, the Supreme Court's failure to endorse the constitutionally protected liberty interest asserted in *Din* indicates that no such authority currently exists. Thus, Macena has not asserted a plausible constitutional claim that would allow for even a limited review of the consular officer's decision.[1] *See Mandel*, 408 U.S. at 770. Accordingly, to the extent that Macena seeks review of the consular officer's determination or an order requiring the consular officer to grant a visa to Poulard, the doctrine of consular nonreviewability bars consideration of that claim. Once again, as USCIS notes, Macena is not precluded from filing another K-1 Petition to restart the process.

---

[1] Even if such a right existed, Macena would be entitled to judicial review only to determine if there was a "facially legitimate and bona fide reason" for the consular officer's decision. *See Mandel*, 408 U.S. at 770. Although the Court need not reach that issue, it appears that the explanation provided to Poulard as required by 22 C.F.R. § 41.121(b)(1), that she was inconsistent in her responses at the consular interview, would meet this standard, because a question about the bona fide nature for the relationship would provide a basis for concluding that she was not eligible for the visa. *See* 8 U.S.C. § 1182(a)(6)(C)(i) (providing that any "alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa" may be rendered ineligible for a visa); *Mandel*, 408 U.S. at 770; *Am. Acad. of Religion*, 573 F.3d at 126 (holding that "the identification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she "knows or has reason to believe" that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason").

## CONCLUSION

For the foregoing reasons, Macena's Request for Permission to Submit a Surreply is GRANTED, USCIS's Motion to Dismiss is GRANTED, and the case is DISMISSED WITH PREJUDICE. A separate Order follows.

Date: November 2, 2015

THEODORE D. CHUANG
United States District Judge